IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Cr. No. 2:22-cr-521 |
| | ) | |
| v. | ) | MOTION TO DISMISS |
| | ) | |
| PERRY JAQUAN JACKSON | ) | |

Defendant Perry Jackson, through his undersigned attorney, respectfully moves this Court to dismiss the indictment against him pursuant to Rule 12 of the Federal Rules of Criminal Procedure. The one count indictment alleges that Mr. Jackson possessed a firearm and ammunition in and affecting commerce, after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). ECF 2.

Section 922(g)(1) of Title 18 provides in relevant part:

(g) It shall be unlawful for any person—

>  (1) who has been convicted in any court of, a crime punishable
>  by imprisonment for a term exceeding one year…
>
>  to ship or transport in interstate or foreign commerce, or
>  possess in or affecting commerce, any firearm or ammunition;
>  or to receive any firearm or ammunition which has
>  been shipped or transported in interstate or foreign commerce.

**I.      Title 18 U.S.C. § 922(g)(1) violates the Second Amendment of the Constitution.**

Title 18 U.S.C. § 922(g)(1) is unconstitutional because it violates Mr. Jackson's right to keep and bear arms as protected by the Second Amendment. "A well regulated Militia, being

necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S.Ct. 2111 (2022), the Supreme Court held that a New York state law regulating the carrying of guns violated an individual's right under the Second Amendment to keep and bear arms. The Supreme Court announced a new two step text-and-history test for analyzing Second Amendment challenges.

At step one, a court first determines whether the Second Amendment's plain text applies to an individual and his conduct. *Id.* at 2126. If it does, *Bruen* held that "the Constitution presumptively protects that conduct." *Id.* Regulating such presumptively protected conduct is unconstitutional.

At step two, the government bears the burden to rebut the presumption of unconstitutionality. They must do this by affirmative proof that the statute in question is consistent with this Nation's historical tradition of firearm regulation that existed at the time the Bill of Rights was adopted in 1791. *Id.* at 2137.

The government alone bears this burden of proof, and the court is not obliged to sift historical materials for evidence to sustain the challenged statute. *Id.* at 2150. If the record yields "uncertainties," the default rule applies, and the challenged statute is invalid.

Where the challenged statute addresses "a general societal problem" that has persisted since the 18th century, the lack of a "distinctly similar" historical statute is relevant to show that the modern statute is inconsistent with the Second Amendment. *Id.* at 2131.

Furthermore, the government's evidence must demonstrate a "widespread" historical practice "broadly prohibiting" the conduct in question. *Id.* at 2137-38.

The Supreme Court in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), provides additional guidance to the *Bruen* methodology that a court must consider when evaluating the constitutionality of gun regulations.

The Court in *Rahimi* addressed a Second Amendment infringement challenge to a neighbor of Mr. Jackson's charge, 18 U.S.C. § 922(g)(8). This section prohibits an individual subject to a domestic violence restraining order from temporarily possessing a firearm when the order resulted from a noticed hearing that produced an explicit finding the individual posed a credible threat to the victim of domestic violence. *Rahimi* at 1894. The federal statute only applies when a court, following a noticed hearing where the individual had an opportunity to be heard, judicially finds the person currently represents a credible threat to the physical safety of others and issues a domestic violence restraining order. 18 U.S.C. § 922(g)(8). Then the individual's Second Amendment rights are temporarily suspended during the duration of that order. Factually, the state court in *Rahimi* limited the order to a period of two years. *Rahimi.* at 1895.

The Supreme Court placed great importance on the temporariness of the deprivation of rights, the opportunity to be heard, and the specificity of a finding that the individual posed a credible threat. These three components of the statute provided the bedrock to support the historic analogs provided to justify the federal regulation. The historic analogs relied on were surety bonds of limited duration, and going armed laws, also called affray laws. *Id.* at 1900-01. Both of these historic analogs required significant procedural safeguards for implementation and both supported temporary disarmament in specific, individual cases. *Id.* at 1900. "Taken together, the surety and going armed laws confirm what common sense suggests: When an

3

individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 1901.

After upholding § 922(g)(8), the Supreme Court remanded several pending challenges to the felon in possession statute, 18 U.S.C. § 922(g)(1), to be considered in light of *Rahimi*. See *Garland v. Range,* No. 23-683, 2024 WL 3259661 at *1 (U.S. July 2, 2024); *Vincent v. Garland,* No. 23-683, 2024 WL 3259668 at *1 (U.S. July 2, 2024); *Jackson v. United States,* No.23-6170, 2024 WL 3259675, at *1 (U.S. July 2, 2024); *Cunningham v. United States,* No. 23-6602, 2024 WL 3259687, at *1 (U.S. July 2, 2024); *Doss v. United States,* No. 23-6842, 2024 WL 3259684. These remands occurred despite the Solicitor General's request to consolidate and decide the constitutionality of the felon in possession ban.  *See* https://www.supremecourt.gov/DocketPDF/23/23-374/315629/20240624205559866_23-374%20Supp%20Brief.pdf, last visited August 1, 2024.

Mr. Jackson's right to keep and bear a firearm under the Second Amendment is clearly impacted by 18 U.S.C. § 922(g)(1).  The historic analogs provided in *Rahimi* for 922(g)(8) do not apply to the felon in possession statute for two reasons.  First, the historic basis in *Rahimi* requires procedural safeguards and a specific court finding that the person poses an actual threat of physical harm to others.  This finding is required by the federal statute and as well as the historical underpinning developed in *Rahimi*.  Inherent in this finding is the "currentness" of the threat posed.  From a risk management perspective, the regulatory actions historically are narrow and targeted only to address current or immediate threats, and those regulatory actions do not linger indefinitely.  The Court even notes that surety bonds of limited duration could not be issued longer than a six month period without another hearing. *Rahimi* at 1900.  The felon in

possession statute is broad; it is a blanket deprivation of rights to an entire category of people with disparate underlying offenses being treated equally. There are no procedural safeguards or granular findings akin to what was historically required. As such the scope of 922(g)(1) is too large to comport with historic analogs.

Second, the felon in possession statute is a permanent removal of rights. There is no limited, temporariness of the deprivation that unlocks the historic analogs relied on by the Court. Once branded a felon, that label stays for life. There is no easily accessible remedial measure around the felon in possession statute that was available historically to those temporarily relieved of their rights, such as surety bonds of limited duration. There is no other identifiable historic analog to support this indefinite removal of Second Amendment rights.

The Fourth Circuit has already recognized the dearth of evidence regarding whether felons were protected by the Second Amendment. *See United States v. Chester,* 628 F.3d 673, 680 (4th Cir. 2010) ("[I]t appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons."). Again, there is no clear historic support for the permanent removal of Second Amendment rights.

**II.     Congress has overreached and criminalized the intrastate possession of a firearm and ammunition solely because the firearm and ammunition crossed state lines at some past undefined unrelated point in time.**

The federal government's enumerated powers are "few and defined," while the powers which remain in the state governments are "numerous and indefinite." *United States v. Lopez,* 514 U.S. 549, 552 (1995). One such enumerated power is to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3.

In *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615 (1937), the Court warned that the scope of the interstate commerce power "must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government."

The Supreme Court has identified three categories of activity that Congress may regulate under its commerce power. *Lopez* at 558–59. "First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, those activities that substantially affect interstate commerce." (Internal citations and quotes omitted). *Id.*

In *Lopez,* the Court considered these three categories, and whether Congress's regulation of guns in a school zone under 18 U.S.C. § 922(q) falls in one of them. *Id.*

First, the Court stated that § 922(q) is a criminal statute, and is not a regulation of the use of the channels of interstate commerce, nor is it an attempt to prohibit the interstate transportation of a commodity. *Lopez* at 559. The first category does not apply.

Second, § 922(q) is not a regulation to protect an instrumentality of interstate commerce or a thing in interstate commerce. *Id.* The second category does not apply.

The third category requires that the regulation be of an activity that substantially affects

interstate commerce, and would be the only possible basis for finding § 922(q) constitutional under the Commerce Clause. *Id.*

The Supreme Court stated that § 922(q) "is a criminal statute that by its terms has nothing to do with "commerce" or any sort of economic enterprise, however broadly one might define those terms. Section 922(q) is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *Lopez* at 561.

Similarly, the insertion of the phrase "which has been shipped or transported in interstate or foreign commerce" in § 922(g) does not fulfill the constitutional requirement set out in *Lopez*. The fact that a defendant may possess a gun and ammunition that at some earlier point was shipped or transported in interstate commerce by some other entity, does not satisfy the requirement that it substantially affects interstate commerce.

In 1977, the Supreme Court addressed a different and prior version of 18 U.S.C. § 922(g) in *Scarborough v. United States,* 431 U.S. 563, (1977). Decided 18 years before the Court's decision in *Lopez,* the only issue was the statutory construction of the then existing statute. The Court held that Congress intended no more than a minimal nexus requirement between the possession of a gun and commerce. *Id.* at 577.

Lower courts have not been able to reconcile the decision in *Scarborough* with *Lopez* because *Scarborough* undertook no constitutional analysis and merely identified a jurisdictional hook. *See United States v. Johnson,* 42 F.4th 743, 750 (7th Cir. 2022) (noting that the decision in

*Scarborough* "was one of statutory interpretation"); *United States v. Seekins,* 52 F.4th 988,991 (5th Cir. 2022)("[T]he Court's holding in Scarborough was statutory, not constitutional.").

The dissent in *Alderman v. United States,* 562 U.S. 1163, (2011) plainly acknowledged this problem. "Recognizing the conflict between *Lopez* and their interpretation of *Scarborough,* the lower courts have cried out for guidance from this Court. . .This Court has a duty to defend the integrity of its precedents, and we should grant certiorari to affirm that *Lopez* provides the proper framework for a Commerce Clause analysis of this type."

To avoid unconstitutionality, the application of *Lopez* to the current version of § 922(g) requires proof that the defendant's offense caused the firearm to move in interstate commerce and substantially affected interstate commerce. The government cannot provide such proof, and the failure to provide such proof must result in a finding that the statute is in violation of the Commerce Clause.

For these reasons, the Defendant requests that the Indictment against him be dismissed.

Respectfully submitted,

*/s/Ann Briks Walsh*
Ann Briks Walsh, Esquire
Assistant Federal Public Defender
145 King Street, Suite 325
Charleston, SC 29402
Attorney ID# 5102

August 9, 2024