**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 2:22-cr-00521-DCN-1 |
| vs. | ) | |
| | ) | **ORDER** |
| PERRY JAQUAN JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The following matter is before the court on defendant Perry JaQuan Jackson's ("Jackson") motion to dismiss the indictment, ECF No. 45. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

On June 15, 2022, the grand jury returned a three-count indictment. ECF Nos. 1; 2. Count 1 charges that on or about March 3, 2022, Jackson knowingly possessed a firearm and ammunition having previously been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1), 924(a)(2), and 924(e). ECF No. 1 at 1. Count 2 charges that on or about March 3, 2022, Jackson knowingly, intentionally, and unlawfully possessed with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(D). Id. Count 3 charges that on or about March 3, 2022, Jackson knowingly possessed a firearm in furtherance of a drug trafficking crime, as set forth in Count 2, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Id. An arrest warrant was issued on June 15, 2022. ECF No. 6. On June 22, 2022, Jackson was arrested, ECF No. 14, and he pleaded not guilty. ECF No. 16.

1

Since the charges are premised on Jackson's previous felony convictions, the court also sets forth the convictions which put Jackson within the purview of § 922(g)(1). On July 21, 2016, Jackson was convicted of assault and battery second degree. ECF No. 20 at 2. September 13, 2019, Jackson was convicted of five qualifying felonies: (1) unlawful carrying of pistol, (2) possession of other controlled substance in Schedule I to V (first offense), (3) manufacture, possession with intent to distribute of other substances in Schedule I, II, III or Flunitrazepam or Analogue (first offense), (4) unlawful carrying of pistol, and (5) pointing and presenting firearms at a person.[1] Id. at 2–3. Each of these convictions is a qualifying felony punishable by imprisonment for a term exceeding one year.

On August 9, 2024, Jackson filed a motion to dismiss the indictment. ECF No. 45. As such, the matter is ripe for review.[2]

## II.  STANDARD

### A.  Fed. R. Crim. P. 12(b)(3)

The court assumes that this motion is made pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, which sets forth certain defects in the indictment

---

[1] The court notes that these five qualifying felonies took place on three different dates: December 20, 2017, August 7, 2018, and December 27, 2018. ECF No. 20 at 2–3.

[2] "[W]here the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts," the motion is ripe for consideration. United States v. Horma, 2018 WL 4214136, at *5 (E.D. Va. Sept. 4, 2018) (citing United States v. Weaver, 659 F.3d 353, 355 n.* (4th Cir. 2011)). So long as the parties do not dispute the relevant facts and the defendant has alleged "an infirmity of law in the prosecution" such as an unconstitutional statute, a motion to dismiss the indictment is procedurally proper. United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012). Thus, though the United States of America (the "government") has not responded to the motion to dismiss, the motion is nonetheless ripe for review.

that can be brought before the court on a pretrial motion.[3]  Fed. R. Crim. P. (12)(b)(3).

Pursuant to Fed. R. Crim. P. 12(b)(3)(B), the district court may, at any time during the

pendency of a case, hear a defendant's claim that an indictment fails to state an offense or

is otherwise defective.  See In re Civil Rights Cases, 109 U.S. 3, 8–9 (1883).  An

indictment is defective if it charges a violation of an unconstitutional statute.  See United

States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004).  Upon a finding that an indictment

is defective, the district court must dismiss the indictment.

     "A district court may dismiss an indictment under Rule 12 where there is an

infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a

determination of facts that should have been developed at trial."  United States v. Engle,

676 F.3d 405, 415 (4th Cir. 2012) (quotation omitted); see United States v. Hill, 700 F.

App'x 235, 236 (4th Cir. 2017) (unpublished).  "Moreover, 'a court cannot grant the

motion to dismiss under Rule 12 if a defendant's legal contentions are inextricably bound

up with the facts of the case.'"  United States v. Chacona, 633 F. Supp. 3d 751, 756

(E.D.N.C. 2021) (quoting United States v. Regaldo, 497 F. Supp. 3d 56, 58 (E.D.N.C.

2020) (alteration omitted)).

### B.  Facial vs. As-Applied Challenges

     "To succeed in a facial constitutional challenge, a movant 'must establish that no

set of circumstances exists under which the Act would be valid.'"  United States v.

---

[3] Jackson states that the motion is brought "pursuant to Rule 12 of the Federal Rules of Criminal Procedure."  ECF No. 45 at 1.  No specific provision is cited, thus requiring the court to presume, based on the substance of the motion, that Jackson brings the motion pursuant to Fed. R. Crim. P. 12(b)(3), which governs motions that must be made before trial and includes alleging that there was "a defect in the indictment or information, including . . . failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).

Hosford, 843 F.3d 161, 165 (4th Cir. 2016) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)); see Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008).  "Because of this stringent standard, a facial challenge is perhaps 'the most difficult challenge to mount successfully.'"  Hosford, 843 F.3d at 165.  A party ordinarily "can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [law] would be valid,' i.e., that the law is unconstitutional in all of its applications."  Wash. State Grange, 552 U.S. at 449 (first alteration in original) (quoting Salerno, 481 U.S. at 745).

"An as-applied challenge requires only that the law is unconstitutional as applied to the challenger's case; a facial challenge requires this showing as well, but it also requires that there be "no [other, theoretical] set of circumstances" in which the law could be constitutionally applied."  United States v. Mgmt. Consulting, Inc., 636 F. Supp. 3d 610, 619 (E.D. Va. 2022) (quoting Salerno, 481 U.S. at 745).

### C.  Second Amendment

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  In New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 142 S. Ct. 2111 (2022), the Supreme Court clarified the appropriate standard for analyzing Second Amendment claims.  The Supreme Court held that lower courts had been incorrect in reading precedent to require a means-end analysis in evaluating Second Amendment claims.  Id. at 23–24.  Instead, the Court explained that District of Columbia v. Heller, 554 U.S. 570 (2008), held, "on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms"

4

for self-defense.  Id. at 20 (quoting Heller, 554 U.S. at 595).  Further, the Supreme Court emphasized that "Heller and McDonald [v. City of Chicago, 561 U.S. 742 (2010),] expressly rejected the application of any" means-end scrutiny because "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon."  Id. at 23 (first quoting Heller, 554 U.S. at 634; and then citing McDonald, 561 U.S. at 790–91).  In place of a means-end analysis, then, the Supreme Court articulated the following standard for considering Second Amendment claims:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).

In applying Bruen's standard, courts must first address the threshold question of whether the Second Amendment's plain text protects the conduct that is being regulated.  Id. at 17, 24.  If it does, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."  Id. at 19.  This requires courts to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."  Id. at 26.  Because "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them," id. at 34 (quoting Heller, 554 U.S. at 634–35), the Second Amendment's "meaning is fixed according to the understandings of those who ratified it," id. at 28.  Thus, in assessing "unprecedented societal concerns or dramatic technological changes" that could not have been anticipated

5

by the Founders, "the historical inquiry that courts must conduct will often involve . . . determining whether a historical regulation is a proper analogue[4] for a distinctly modern firearm regulation."  Id. at 28–29.

However, the Court noted that "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check."  Id. at 30.  Instead, "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin."  Id.  "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."  Id.; see also United States v. Rahimi, 144 S. Ct. 1889, 1897 (2024) ("These precedents [directing courts to examine the historical tradition of firearm regulation] were not meant to suggest a law trapped in amber. . . [h]olding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers."); id. at 1925 (Barrett, J., concurring) ("'Analogical reasoning' under Bruen demands a wider lens: Historical regulations reveal a principle, not a mold.").

### D.  Commerce Clause

The Commerce Clause permits Congress "[t]o regulate Commerce . . . among the several States."  U.S. Const. art. I, § 8, cl.3.  According to the Supreme Court in the seminal case of United States v. Lopez, the Commerce Clause allows Congress to regulate three categories of activity: (1) "the use of the channels of interstate commerce," such as interstate railroads and highways; (2) "the instrumentalities of interstate

---

[4] Google says that "'analog' is standard in American English, while 'analogue' is standard in British English."  Since the Supreme Court opts for "analogue" and it "grades my papers," this court will use "analogue."

commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce."  514 U.S. 549, 558–59 (1995).

Relevant to § 922(g), Congress has the power under the Commerce Clause to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce.  Wickard v. Filburn, 317 U.S. 111, 128–29 (1942).  Congress may regulate local activities if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity.  Gonzales v. Raich, 545 U.S. 1, 18 (2005).  The Court made it clear that "when 'a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.'"  Id. at 17 (quoting Lopez, 514 U.S. at 558).

In the wake of Lopez, the Fourth Circuit found that "[u]nlike the statute at issue in Lopez, § 922(g) expressly requires the Government to prove the firearm was shipped or transported in interstate or foreign commerce; was possessed in or affected commerce; or was received after having been shipped or transported in interstate or foreign commerce."  United States v. Wells, 98 F.3d 808, 811 (4th Cir. 1996) (internal quotation marks omitted).  Thus, "[t]he existence of this jurisdictional element, requiring the Government to show that a nexus exists between the firearm and interstate commerce to obtain a conviction under § 922(g), distinguishes Lopez and satisfies the minimal nexus required for the Commerce Clause."  Id.  Moreover, in the years since Lopez was decided, the Fourth Circuit has consistently held that § 922(g) does not violate the Commerce Clause.  See, e.g., Wells, 98 F.3d at 810–11; United States v. Williams, 445 F.3d 724, 740 (4th

7

Cir. 2006); <u>United States v. McQueen</u>, 445 F.3d 757, 759 (4th Cir. 2006); <u>United States v. Gallimore</u>, 247 F.3d 134, 136 (4th Cir. 2001); <u>United States v. Kline</u>, 494 F. App'x 323, 325 (4th Cir. 2012).

### III.   DISCUSSION

Jackson brings a facial challenge to the constitutionality of § 922(g)(1) and claims it violates the Second Amendment.  ECF No. 45 at 1–5.  Jackson also brings facial and as-applied challenges to § 922(g) and claims that it is unconstitutional and beyond the scope of what is permitted under the Commerce Clause.  <u>Id.</u> at 5–7.  Whether Congress has the power to enact § 922(g)(1) under the Commerce Clause and whether such a prohibition would run afoul of the Second Amendment are separate and distinct questions.  <u>Kline</u>, 494 F. App'x at 325.  As such, the court begins with Jackson's Second Amendment argument before turning to his Commerce Clause arguments.

#### A.  Second Amendment

Jackson brings a facial challenge to § 922(g)(1).  A facial challenge to a legislative act requires the challenger to "establish that no set of circumstances exists under which the Act would be valid."  <u>Salerno</u>, 481 U.S. at 745.  Thus, Jackson bears the burden of showing that under no set of circumstances is the Act valid.  <u>See id.</u>

In the wake of <u>Bruen</u>, the Fourth Circuit has unequivocally stated that § 922(g)(1) is facially constitutional.  <u>United States v. Canada</u>, 103 F.4th 257, 258 (4th Cir. 2024); <u>United States v. Price</u>, 2024 WL 3665400, at *6 n.4 (4th Cir. Aug. 6, 2024) (en banc).  In <u>Canada</u>, the court expressly rejected Canada's argument that § 922(g)(1) is facially unconstitutional; instead finding the federal felon-in-possession ban to be facially constitutional.  103 F.4th at 258.  That panel noted that while the law of the Second

Amendment is "in flux . . . in the wake of [] <u>Bruen</u>," the facial constitutionality of § 922(g)(1) is not a difficult question.  <u>Id.</u>  That court further stated that § 922(g)(1) "has a plainly legitimate sweep" and may constitutionally be applied in at least some set of circumstances.  <u>Id.</u>  Finally, it gave an example and, in so doing, unequivocally stated that "the government may constitutionally forbid people who have been found guilty of [drive-by-shooting, carjacking, armed bank robbery, or even assassinating the President of the United States] from continuing to possess firearms."  <u>Id.</u> at 258–59.

In <u>Price</u>, the Fourth Circuit, sitting <u>en</u> <u>banc</u>, noted that, as a convicted felon, Price was "likely not one of the 'law-abiding' citizens the <u>Bruen</u> Court easily concluded were about 'the people' whom the Second Amendment protects."  2024 WL 3665400, at *6 n.4 (citing <u>Bruen</u>, 597 U.S. at 31–32).  The court reiterated its conclusion that 18 U.S.C. § 922(g)(1) "is <u>facially</u> constitutional because it has a 'plainly legitimate sweep.'"  <u>Id.</u> (quoting <u>Canada</u>, 103 F.4th at 258).  Ultimately, the court left open the question of whether "a person with a felony conviction (or a particular kind of felony conviction, like a conviction for a violent crime) may be included within 'the people' for purposes of the Second Amendment; and if so, whether they can nevertheless be disarmed consistent with the nation's historical tradition of firearm regulation."  <u>Id.</u>  In practical terms, the court "declined to opine on the open questions regarding as-applied challenges and nonviolent felons" because the answers to those questions did not affect the outcome of the question before the court.  <u>Id.</u>  Relevant to the question presented in this case, the Fourth Circuit unambiguously rejected a facial challenge to § 922(g)(1).  <u>See id.</u>

The court's conclusion as to the facial constitutionality of § 922(g)(1) accords with prior Fourth Circuit cases on this issue that were decided in the wake of <u>Heller</u>—but

prior to <u>Bruen</u>—which did not rely on the means-end analysis, but rather a review of the plain text of the amendment.[5]  <u>See</u> <u>United States v. Moore</u>, 666 F.3d 313, 318–19 (4th Cir. 2012); <u>United States v. Pruess</u>, 703 F.3d 242, 245–48 (4th Cir. 2012).  It also accords with guidance from the Supreme Court in which it recently reiterated that "many [categorical] prohibitions, like those on the possession of firearms by 'felons and the

---

[5] The Fourth Circuit's decisions in <u>Moore</u>, 666 F.3d at 318–19, and in <u>Pruess</u>, 703 F.3d at 245–48, made in the wake of <u>Heller</u> but prior to <u>Bruen</u>, likely foreclose this court from finding that a convicted felon is a protected member of "the people" of the Second Amendment.  In <u>Moore</u>, the court considered a facial and as-applied challenge to § 922(g)(1) by a defendant with two previous felony convictions for selling or delivering cocaine, three common law robberies, and two assaults with a deadly weapon on a government official.  <u>Moore</u>, 666 F.3d at 315.  In <u>Pruess</u>, the Fourth Circuit confronted an as-applied challenge to § 922(g)(1) by a defendant previously convicted of "numerous firearms violations."  <u>Pruess</u>, 703 F.3d at 244.  His convictions involved dealing firearms—not using them—thus the defendant considered himself a "non-violent felon" and thereby entitled to protection by the Second Amendment.  <u>Id.</u> at 245.  Though the analysis in each case did not follow the exact two-step inquiry set forth in <u>Bruen</u>, the Fourth Circuit analyzed whether § 922(g)(1) burdens conduct that comes within the scope of the Second Amendment—<u>i.e.</u>, whether the possession of a firearm by a convicted felon is protected by the Second Amendment—which is a similar inquiry to the first step of the <u>Bruen</u> analysis.  <u>See</u> <u>Moore</u>, 666 F.3d at 317, 319; <u>Pruess</u>, 703 F.3d at 246; <u>Bruen</u>, 597 U.S. at 19 (determining that the first step in the predominant circuit court framework was "broadly consistent with <u>Heller</u>, which demands a test rooted in the Second Amendment's text, as informed by history").

Thus, the decisions in <u>Moore</u> and <u>Pruess</u> did not rely on the means-end analysis which <u>Bruen</u> abrogated and thereby remain good law.  <u>See</u> <u>Payne v. Taslimi</u>, 998 F.3d 648, 654 (4th Cir. 2021) ("Only by granting en banc review may we apply stare decisis balancing to overrule precedent set by a prior panel (or a prior en banc court)"); <u>see also</u> <u>United States v. Finney</u>, 2023 WL 2696203, at *3 (E.D. Va. Mar. 29, 2023) ("<u>Moore</u> and <u>Pruess</u> did not rely on the second step of the two-step test that <u>Bruen</u> abrogated."); <u>United States v. Fowler</u>, 2024 WL 197601, at *5 (E.D. Va. Jan. 18, 2024) ("No decision by the Fourth Circuit has expressly overruled <u>Moore</u> or <u>Pruess</u>, and because those decisions did not rely on the second step of the two-step framework that <u>Bruen</u> abrogated, . . . , <u>Moore</u> and <u>Pruess</u> remaining binding precedent that the Court must faithfully apply.").  The Fourth Circuit has sidestepped the question of "whether <u>Bruen</u> sufficiently unsettled the law in this area to free [the Fourth Circuit] from [its] otherwise-absolute obligation to follow this Court's post-<u>Heller</u> but pre-<u>Bruen</u> holdings rejecting constitutional challenges to this same statute.  <u>Canada</u>, 103 F.4th at 258 (citing <u>Moore</u>, 666 F.3d at 318).  Nevertheless, these cases remain instructive to the challenge presently before the court.

mentally ill,' are 'presumptively lawful.'" <u>Rahimi</u>, 144 S. Ct. at 1902 (quoting <u>Heller</u>, 554 U.S. at 626).  Thus, binding precedent leads the court to reject Jackson's facial challenge to the constitutionality of § 922(g)(1).  Echoing the Fourth Circuit's own rationale, the court need not resolve whether § 922(g)(1)'s constitutionality turns on the definition of the "people" at the first step of <u>Bruen</u>, a history and tradition of disarming dangerous people considered at step two, or the Supreme Court's repeated references to "law-abiding citizens" and "longstanding prohibitions on the possession of firearms by felons." <u>See</u> <u>Canada</u>, 103 F.4th at 258.  The court denies Jackson's motion to dismiss based on a facial challenge to § 922(g)(1).

### B.  Commerce Clause

Jackson's second argument appears to bring facial and as-applied challenges to the constitutionality of § 922(g) in that he alleges the statute to be an overreach of congressional authority under the Commerce Clause.  <u>See</u> ECF No. 45 at 5–7.

Jackson first argues that "Congress has overreached and criminalized the intrastate possession of a firearm and ammunition solely because the firearm and ammunition crossed state lines at some past undefined unrelated point in time." <u>Id.</u> at 5.  Jackson's facial argument is squarely foreclosed by binding Fourth Circuit precedent that finds § 922(g) facially constitutional under the Commerce Clause.  <u>See, e.g.</u>, <u>Wells</u>, 98 F.3d at 810–11; <u>see also</u> <u>McQueen</u>, 445 F.3d at 759 (holding that the government may established the requisite interstate commerce nexus by showing that a firearm was manufactured outside the state where the defendant possessed it).

Jackson's second argument is an as-applied challenge also based on the Commerce Clause where he argues that the government cannot prove that Jackson's

offense "caused the firearm to move in interstate commerce and substantially affect interstate commerce." ECF No. 45 at 8. Jackson is charged with possession of a Glock, model 19, 9mm pistol and miscellaneous rounds of 9mm ammunition. ECF No. 1 at 3–4.

An as-applied challenge must be "based on a developed factual record and the application of a statute to a specific person." Richmond Med. Ctr. for Women v. Herring, 570 F.3d 165, 172 (4th Cir. 2009) (en banc). To the extent that Jackson challenges the indictment on as-applied Commerce Clause grounds, Jackson's argument asks the court to delve into the alleged facts of the case.[6] See ECF No. 45 at 5–7. A court may rule on a Rule 12(b) motion only if "the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3); see Fed. R. Crim. P. 12(b)(1). Accordingly, a court may rule on a Rule 12(b) motion only if a "trial of the facts surrounding the commission of the alleged offense[s] would be of no assistance in determining the validity of the defense" or the indictment. United States v. Covington, 395 U.S. 57, 60 (1969).

Here, a trial will assist in determining the validity of the defense. Specifically, "because this is an as-applied challenge, whether [Jackson's] conduct sufficiently affects interstate commerce as to satisfy the constitutional limitations placed on Congress' Commerce Clause power may well depend on a consideration of facts, and because the facts proffered here may or may not be developed at trial, it is premature to determine the

---

[6] To find Jackson guilty of violation of § 922(g)(1), the government would need to prove that the gun "was shipped or transported in interstate or foreign commerce; was possessed in or affected commerce; or was received after having been shipped or transported in interstate or foreign commerce." Wells, 98 F.3d at 811 (internal quotation marks omitted). Jackson has neither forecasted evidence that the government cannot meet this burden nor established that it would be impossible for the government to prove, for example, that the Glock was manufactured outside of South Carolina. See id.; ECF No. 45 at 5–7. Thus, a sufficient evidentiary record is not before the court and the motion to dismiss impermissibly asks the court to engage in such fact-finding.

constitutional issues." <u>Hill</u>, 700 F. App'x at 237; <u>see</u> <u>Engle</u>, 676 F.3d at 415; <u>Regaldo</u>, 497 F. Supp. 3d at 58.  Accordingly, the court denies Jackson's motion to dismiss the indictment on Commerce Clause grounds.

### IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 19, 2024**
**Charleston, South Carolina**

13